UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SCHAEFFER, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>GREGORY VILLAGE PARTNERS, L.P., et al.,<br><br>        Defendants. | Case No. 13-cv-04358-JST<br><br>**ORDER RE DISCOVERY DISPUTE** |

Now before the Court is the parties' discovery dispute regarding the applicability of the attorney-client privilege and work-product protection to the documents listed in Gregory Village Partners, LP and VPI, Inc.'s (collectively, "Gregory Village") privilege log. See ECF No. 104. Having carefully reviewed the documents *in camera* and considered the arguments and evidence presented by the parties, the Court finds that certain documents identified by Gregory Village as privileged are not and orders Gregory Village to produce those documents to Plaintiffs.

I.  **BACKGROUND**

    **A.**  **Factual History**

In June 2011, Plaintiffs brought this action against multiple defendants, seeking to remediate contamination at the site of their home. ECF No. 1-1. Gregory Village is the current owner of a property from which some of that contamination allegedly flowed. Id. at 2-4.

VPI, Inc.'s Vice President, Mary Haber, also serves as Gregory Village's in-house general counsel. Decl. of Mary Haber in Supp. of Gregory Village Br. that Communications with Tracy Craig Are Privileged, ¶¶ 1, 2 ("Haber Declaration"); ECF No. 118 at 4. According to Haber, VPI, Inc. and Gregory Village are "associated entities." Haber Decl. ¶ 1. Plaintiffs contend that it is not clear when Haber is acting in her role as general counsel as opposed to her role as a businesswoman, as she "wears multiple hats" in her work for the companies, and signs various

documents pertinent to this litigation either as Vice President of VPI, Inc., as general counsel to Gregory Village, or both. ECF No. 118 at 4, 11.

In February 2009, Gregory Village hired Tracy Craig and her company, Craig Communications, as public relations consultants. ECF No. 118 at 3 & Ex. 3. At that time, the Regional Water Quality Control Board ("Board") was working with Gregory Village regarding possible contamination from its property and to determine what steps should be taken toward remediation. Id. Ex. 4. Craig and her company's official responsibilities included: (1) conducting "community research," identifying "key contacts," and developing a "key contact list with representative names, addresses," etc.; (2) meeting with Gregory Village and the Board to "develop initial outreach strategy and short-term outreach goals," and following-up to "refine key messages and project strategy"; (3) developing a one-page fact sheet summarizing "main project points to provide to elected officials and key community representatives"; (4) scheduling and attending "ten meetings with key stakeholders"; and (5) preparing a short report summarizing "community characteristics and composition, key social and community organizations, preferred methods to communicate with various segments of the community, [and] information gathered from outreach meetings and recommended outreach tasks." Id. at 3 & Ex. 3.

Craig participated in public meetings before the Board and the City of Pleasant Hill with Ed Firestone, an outside attorney working for Gregory Village. Haber Decl. ¶¶ 5, 20. Craig also went door-to-door in neighborhoods potentially affected by contamination from the Gregory Village property to meet neighbors and, in some cases, seek to secure access agreements to permit Gregory Village's environmental consultants to perform sampling as required by the Board. Id. She also met with neighbors, including the Plaintiffs, to persuade them to agree to the installation of depressurization systems under their homes as a mitigation measure. Id. ¶ 21.

**B.     Procedural History**

On May 16, 2012, Plaintiffs requested production from Gregory Village of various documents related to this litigation. ECF No. 118 at 1. Gregory Village responded to Plaintiffs' request on June 29, 2012, and on November 5, 2012, served on Plaintiffs a privilege log, claiming attorney-client privilege or work-product protection for more than one thousand documents

2

1    encompassing thousands of pages. Id.  The parties met and conferred regarding the request for
2    production and the privilege log, and Gregory Village has since modified versions its privilege log
3    three times. Id.  Plaintiffs continue to object to Gregory Village's claims of privilege for the
4    documents listed on the log. See ECF No. 104 at 1.  In particular, Plaintiffs object to Gregory
5    Village's claims of privilege or work-product protection for documents that contain
6    communications from or to Tracy Craig and/or Mary Haber. Id.  Plaintiffs also object to the fact
7    that the descriptions of documents listed in past versions of the log have been shown to be
8    inaccurate, and therefore Plaintiffs do not believe that the current log entries accurately describe
9    the documents listed on the log. Id. at 2.

10       On October 6, 2014, the Court ordered Gregory Village to review its privilege log and to
11   verify that it continues to assert the privilege or work-product protection as to every item on it.
12   Id. at 3.  To the extent Gregory Village, after review, no longer asserted the privilege for certain
13   log entries, it was ordered to revise its privilege log and submit it to Plaintiffs by October 16,
14   2014. Id.  The Court also ordered Gregory Village to ensure that the descriptions of documents
15   contained in the log were accurate, and to file a brief in support of its claims of privilege. Id.

16       In response, Plaintiffs were ordered to identify up to fifty documents for which Gregory
17   Village asserted the privilege based on Haber's participation in the communication contained in
18   the documents ("Haber Documents"), and fifty documents wherein the claim of privilege rested on
19   Craig's participation in the communication ("Craig Documents"), and to which Plaintiffs objected
20   to the assertion of the privilege. Id.  Also, Plaintiffs were to file an opposition to Gregory
21   Village's brief in support of its privilege claims. Id.  Finally, Gregory Village was to lodge with
22   the Court paper copies of the aforementioned documents, and the same documents saved to a CD.
23   Id.

24       The parties have complied with the Court's October 6 Order, submitting the documents to
25   each other and to the Court as requested.  The privilege log Gregory Village submitted to Plaintiffs
26   and the Court now contains 1,145 entries. Id.  Plaintiffs continue to object to Gregory Village's
27   claims of privilege. See ECF No. 118.
28

Gregory Village also submitted to the Court[1] a document entitled "Further Submission by Defendants Gregory Village Partners, L.P. and VPI, Inc. Regarding Craig and Haber Documents Designated as Privileged by Defendants and Selected by Plaintiffs for In Camera Review" ("Further Submission").  In the Further Submission, Gregory Village either partially or fully withdraws its claim of privilege with respect to several of the documents on the privilege log.[2] Because, Plaintiffs contend, the Further Submission indicates that Gregory Village has not carefully reviewed its privilege log to ensure that each entry on the log is justified, and because descriptions of documents in the log continue to be inaccurate, despite the Court's previous order, Plaintiffs object to Gregory Village's claim of privilege with respect to each document in the log. ECF No. 118 at 2.

## II.   LEGAL STANDARD

Where, as here, subject matter jurisdiction is premised on a federal question, federal common law governs privilege issues.  Fed. R. Evid. 501; United States v. Ruehle, 583 F.3d 600, 608 (9th Cir. 2009).  "A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication." United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (quotations and internal alterations omitted).  "Because it impedes the full and free discovery of the truth, the attorney-client privilege is strictly construed." Id. (quotations omitted).  The Ninth Circuit applies an eight-factor test to

---

[1] Presumably because it contained the confidential documents of Gregory Village, and to avoid placing the materials in the public record, the document was lodged with the Court but not filed.

[2] In its Further Submission, Gregory Village explains that it no longer claims that portions of the following documents are privileged as Craig Documents (for ease, the Court uses the document numbers in Gregory Village's privilege log): 722, 745, 754.  Gregory Village still asserts these documents are privileged as Haber Documents.  Gregory Village also no longer asserts the privilege with respect to the following Haber Documents: 33, 35, 36, 43, 81, 589, and portions of 1083.  Accordingly, the Court finds that Gregory Village must produce these documents, or portions thereof, to Plaintiffs within ten days of the date of this Order.  (The Court rejects the argument that these documents are separately protected from disclosure because they involve financing.)  Gregory Village also acknowledges that Craig was not included in the communications in documents 519 and 609 on its privilege log, though it listed them as "Craig Documents."  Gregory Village continues to assert the privilege as to these documents, however, as "Haber Documents."  Finally, the Court notes that documents 786 and 1046 also appear to be mislabeled as Craig Documents.

4

determine whether communications are covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Id. The transmission of a communication to a party outside the attorney-client relationship destroys the confidentiality of the communication and therefore the privilege may not be invoked as to that communication. See Ruehle, 583 F.3d at 609. Where a given communication contains both privileged and non-privileged information, the party asserting the privilege may bear the burden of "segregat[ing] the privileged information from the non-privileged information." Id.

Work-product protection derives from Federal Rule of Civil Procedure 26(b)(3). Under that rule, attorney work-product prepared in anticipation of litigation is protected from disclosure. Fed. R. Civ. P. 26(b)(3); see, e.g., Great Am. Assurance Co. v. Liberty Surplus Ins. Co., 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009).

## III.  DISCUSSION

### A.  Application of the Attorney-Client Privilege to Tracy Craig Documents

The parties dispute whether Craig's communications constitute "communications . . . by the client" and whether they were communications for the purpose of providing and receiving legal advice from a professional legal adviser.

#### 1.  Tracy Craig as "client"

Gregory Village contends that the attorney-client privilege extends to Craig as Gregory Village's agent and "functional employee." Gregory Village Br. Regarding Applicability of Privilege to Tracy Craig Docs., at 6 ("Gregory Village Brief"). Further, Gregory Village contends, "[c]ommunications by third parties . . . concerning a client's legal and litigation interests are no less privileged than if the exchanges were directly between attorney and client." Id. (citing United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989)). Plaintiffs counter that Craig is not a "functional employee," but merely a third party, because her communications with Gregory Village attorneys did not "emanate[] directly from" Gregory Village, and that "[t]he mere

1    possibility that a public relations firm might help counsel formulate legal advice is not sufficient to

2    invoke the privilege." ECF No. 118 at 6 (citing Calvin Klein Trademark Trust v. Wachner, 198

3    F.R.D. 53 (S.D.N.Y. 2000).

4         The underlying basis for Gregory Village's assertion of privilege of communications with

5    Craig is the decision in Upjohn Co. v. United States, 449 U.S. 383 (1981). In Upjohn, the

6    Supreme Court held that the proper inquiry for assessing the scope of the privilege in corporations

7    is which corporate employees or agents possess relevant information the corporate attorney needs

8    to render sound legal advice to the corporation. Id. at 391-92. "Functional employees" are agents

9    of a corporation that fall within the privilege's scope under Upjohn.

10        Gregory Village cites several cases in support of its argument that Craig should be treated

11   as a functional employee. The most relevant here are Graf, In re Bieter Co., 16 F.3d 929 (8th Cir.

12   1994), and In re Copper Market Antitrust Litigation, 200 F.R.D. 213 (S.D.N.Y. 2001). See also

13   FTC v. GlaxoSmithKline, 294 F.3d 141, 148 (D.C. Cir. 2002) (extending privilege to

14   communications between corporate employees and corporation's public relations and government

15   affairs consultants; "the consultants became integral members of the team assigned to deal with

16   issues that were completely intertwined with [the corporation's] litigation and legal strategies.")

17   (internal alterations and quotations omitted); McCaugherty v. Siffermann, 132 F.R.D. 234, 239

18   (N.D. Cal. 1990) (concluding that the privilege applied to communications with consultants,

19   where the consultants performed work within "an environment dense in regulations," and the

20   consultants "knew that whatever deals they considered had to be analyzed within that regulatory

21   framework," and "also knew that there would be consequential legal implications of" their

22   actions).

23        In Bieter, the court found the privilege applied to communications between an attorney and

24   a consultant working for the client-company, where the consultant was intimately involved in the

25   subject matter of litigation arising from a real estate venture the consultant had been hired to assist

26   in developing, because the consultant was "the functional equivalent of an employee." 16 F.3d at

27   938-40. The Ninth Circuit adopted Bieter's "functional employee" test in Graf. Graf, 610 F.3d at

28   1156-59. That case, however, presented a much more clear-cut circumstance than that presented

1    here.  The "consultant" at issue in Graf was "heavily involved in all facets of the company's

2    operations," and there was evidence that the only reason the "consultant" was not hired formally

3    as a company employee was that the state of California had banned him from insurance work,

4    which was the company's business.  Id. at 1153 & n.2.

5          Perhaps the closest case factually to the one now before the Court is Copper Market.

6    There, the court found that the privilege extended to litigation-related communications to and from

7    a public relations firm a corporation hired to respond to anticipated and actual litigation.  200

8    F.R.D. 213.  The court explained that, under Upjohn, "there is no reason to distinguish between a

9    person on the corporation's payroll and a consultant hired by the corporation if each acts for the

10   corporation and possesses the information needed by attorneys in rendering legal advice."  Id. at

11   219.  The court went on to find that the firm "was, essentially, incorporated into [the

12   corporation's] staff to perform a corporate function that was necessary in the context of the

13   government investigation, actual and anticipated private litigation, and heavy press scrutiny

14   obtaining at the time."  Id.  The firm's "function" included "preparing statements for public

15   release and internal documents designed to inform [corporate] employees about what could and

16   could not be said about the scandal" that formed the basis of governmental action and litigation.

17   Id.

18         Under these precedents, Craig was a "functional employee" of Gregory Village.  At the

19   time she was hired, Gregory Village faced regulatory action by the Board in light of possible

20   contamination at the site, as well as potential litigation with neighbors whose properties might

21   have been contaminated.  She also interacted with neighbors—potential opponents in litigation,

22   who turned out, at least in this case, to be actual opposing litigants—to gather information from

23   them regarding their concerns about the contamination; to secure access agreements so Gregory

24   Village could perform on-site sampling; to plan and execute sampling on site; and to attempt to

25   avoid litigation on behalf of Gregory Village by offering to install depressurization systems to

26   prevent contaminated vapor particles from entering Plaintiffs' home.  When attending public

27   meetings, interacting with neighbors, and otherwise being the face of the company, Gregory

28   Village's attorneys counseled her actions.  In all these activities, Craig acted as the public face of

1  the company and provided information to Gregory Village's legal staff that was useful and
2  necessary to evaluate legal strategy for the company going forward.  Craig acted as Gregory
3  Village's functional employee for the purposes of the attorney-client privilege.
4         And because the Court finds that Craig was acting as a functional employee, disclosure of
5  confidential information to her does not destroy the privilege.  So to the extent that Plaintiffs assert
6  that certain communications are not privileged because Craig was included in those
7  communications, Plaintiffs' objections fail.
8         Plaintiffs assert that various cases show that the Craig Documents should not be protected
9  by the privilege.  See, e.g., Calvin Klein, 198 F.R.D. 53; Great American Surplus Lines Insurance
10 Co. v. Ave Oil Co., 120 F.R.D. 533, 538 (E.D. Cal. 1988).  Plaintiffs' authorities are
11 distinguishable.
12        Calvin Klein, for example, involved the assertion of privilege and work-product protection
13 related to communications with a public relations firm hired by plaintiff's counsel.  198 F.R.D. 53.
14 In that case, however, the communications at issue "appear[ed] on their face to be routine
15 suggestions from a public relations firm as to how to put the 'spin' most favorable to [Calvin
16 Klein] on successive developments in the ongoing litigation."  Id. at 54.  The court found that
17 "few, if any, of the documents in issue appear to contain or reveal confidential communications
18 from the underlying client . . . made for the purpose of obtaining legal advice."  Id.  The court
19 explained that "the possibility that communications between [the firm] and [counsel] may help the
20 latter to formulate legal advice is not in itself sufficient to implicate the privilege . . . ."  Id.
21 (citation omitted).  The court reiterated that the firm was "simply providing ordinary public
22 relations advice so far as the documents" in question were concerned, so it was unlikely that the
23 communications were "originally made for the purpose of seeking legal advice."  Id.
24        Here, unlike in Calvin Klein, Craig communicated directly with the regulatory bodies and
25 neighbors/potential legal adversaries that were the source of Gregory Village's legal concerns.
26 She collected information from neighbors that she transmitted to Gregory Village's attorneys for
27 the purpose of assisting counsel to obtain access agreements and negotiate potential disputes in the
28 shadow of possible litigation.  She was hired solely to perform those functions, unlike the firm in

8

Calvin Klein, which the company had already retained for general public relations. In contrast to the firm in Calvin Klein, Craig's duties for Gregory Village were so intertwined with the subject matter for which Gregory Village sought legal advice that she should be treated as a functional employee. Finally, the Calvin Klein court expressly relied on the fact that the communications at issue were not made for the purpose of obtaining legal advice; unlike here, the court did not expressly decide whether the firm's employees should be treated as Calvin Klein's "functional employees."

In short, the Court finds that Craig was Gregory Village's functional employee. But that finding does not answer the question whether all of her communications with Gregory Village employees were for the purpose of providing or receiving legal advice on behalf of Gregory Village, an element of the privilege that Gregory Village still bears the burden to prove.

### 2. Communications related to a legal purpose

After review of the Craig Documents, the Court finds that the following documents contain communications for the purpose of providing or receiving legal advice related to potential regulatory action by the Board or litigation by neighbors: 53, 444, 594, 607-09, 617, 621, 634, 652, the portion of 745 for which Gregory Village still asserts the privilege, the portion of 747 that is *not* an email and draft agenda sent to Board members Kevin Brown and Chuck Headlee, 753, 785, 786, 808, 812, 990, and 1141-45. The Court also finds that the following documents do *not* contain communications related to a legal purpose: 478, 508-10, 512, 513, 515, 517, 519, the portion of 722 for which Gregory Village continues to claim the privilege, 754, 777, and 1115. Instead, these latter documents contain communications regarding such matters as scheduling, acquiring babysitters, and identifying to which neighbors to give gift cards. With respect to the latter documents, Gregory Village has not carried its burden to show that the documents are privileged. It therefore must produce them to Plaintiffs.

### B. Objections to Haber Documents

#### 1. Attorney-client privilege

No party questions that Haber is an attorney. The parties do, however, dispute whether: (1) Haber offered the communications in the Haber Documents in her capacity as a legal advisor,

9

1   as opposed to her position as the Vice President of VPI, Inc., (2) for the purpose of providing legal
2   advice to her client, Gregory Village, and/or (3) whether those communications were made in
3   confidence—i.e., outside the presence of third parties who would destroy the privilege. In this
4   case, the first two questions collapse into one.

5   Plaintiffs contend, based on Chevron Texaco, that Gregory Village has not made the
6   necessary showing to indicate that Haber made the communications in the Haber Documents in
7   her role as legal adviser, rather than in her role as Vice President of VPI, Inc. ECF No. 118 at 10-
8   12. In Chevron Texaco, the court explained that when communications for which the privilege
9   has been asserted involve in-house counsel, the entity asserting the privilege "must make a clear
10  showing that the speaker made the communications for the purpose of obtaining or providing legal
11  advice." 241 F. Supp. 2d at 1076 (citation and internal alterations omitted). Thus, whether Haber
12  engaged in these communications in her role as legal adviser and whether the communications
13  were made for a legal purpose become the same fundamental question: whether Haber engaged in
14  the communications for the purpose of providing legal advice to Gregory Village.

15  Having reviewed the Haber Documents, the Court finds that Haber engaged in the
16  communications contained in the following documents for the purpose of providing or obtaining
17  legal advice: 12, 17, 18, 20, 21, 32, 84, 85, 103, 108, 112, 246, 543, 544, 571, 574, 575, 668, 689,
18  690, 695, 736, 744, 826, 864, 981-84, 1083 (as modified by Gregory Village's Further
19  Submission), 1095, 1118, 1124, and 1140. These communications were made for the purpose of
20  obtaining information about possible contamination at the Gregory Village site, conducting and
21  interpreting sampling at the site, and interacting with the Board, all of which were the subject of
22  ongoing or pending legal or regulatory proceedings. On the other hand, the Court finds that
23  Gregory Village has not met its burden of demonstrating that the communications in the following
24  Haber Documents were made for the purpose of providing or obtaining legal advice: 83, 519, 577,
25  642, and 1046.

26  Documents 134 and the portion of document 941 that was disclosed to Sylvia Pong are not
27  privileged because they were disclosed to a third party.
28

### 2. Work-product protection

The Court finds that documents 1119, 1121, 1124, and 1127 reflect Haber's notes and research related to contamination at the Gregory Village property, and they reveal her mental impressions regarding the Board's regulatory action and potential litigation by neighbors. They are thus Haber's attorney work-product, see SEC v. Roberts, 254 F.R.D. 371, 382-83 (N.D. Cal. 2008), and are not subject to production to Plaintiffs without a showing of "substantial need," Fed. R. Civ. P. 26(b)(3)(A)(i). Plaintiffs have not indicated their substantial need for these documents and so they remain protected and not subject to production to Plaintiffs.

### C. Gregory Village's Failure To Comply With the Court's Order To Review Its Privilege Log

The Court is troubled by Gregory Village's apparent failure to review its privilege log carefully after the Court specifically ordered it to do so. See supra note 1 and accompanying text; ECF No. 104 at 3 ("By October 16, 2014, Gregory Village shall review its privilege log to ensure that (a) Gregory Village continues to assert the attorney-client privilege as to each document on the log; and (b) each document description on the log accurately reflects the subject matter of the underlying communication."). Gregory Village withdrew several of the challenged privilege log entries *after* it had supposedly re-certified the legitimacy of its privilege log, but before the parties' dispute was submitted to the Court; documents on the privilege log continued to be mislabeled; and non-privileged documents remained on the privilege log. These facts lead to the conclusion that Gregory Village either did not review its privilege log as required by the Court's order, or did not take its obligations to the Plaintiffs or the Court seriously when it conducted that review. The Court now has very little confidence in the remainder of Gregory Village's privilege log. Indeed, it appears likely that Gregory Village's log is shielding additional relevant, unprivileged documents from production.

This circumstance is frustrating to the Court. The Court has *already* ordered Gregory Village to review its privilege log, and there would appear to be little benefit in the Court merely repeating its order. It also appears that Gregory Village's conduct leading up to the submission of the motion may not have been in good faith, and that it may have unnecessarily multiplied the

11

proceedings. Accordingly, Gregory Village is hereby ORDERED TO SHOW CAUSE why monetary sanctions should not be imposed against it pursuant to either Rule 37(a)(5) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or both.[3] Gregory Village is ordered to respond in writing to this order by February 9, 2015. Plaintiffs may, but are not required, to file a response to Gregory Village's response by February 17, 2015. If Plaintiffs file a response, Gregory Village may file a reply by February 23, 2015. The Court will conduct a hearing on this Order to Show Cause on March 10, 2015 at 2:00 p.m.

By February 9, 2015, Gregory Village is also ordered to file a declaration under penalty of perjury, by an attorney of record, that he or she has personally reviewed every entry on the Gregory Village privilege log and affirmatively determined that (a) Gregory Village continues to assert the attorney-client or work product privilege as to each document on the log; and (b) each document description on the log accurately reflects the subject matter of the underlying communication.

**CONCLUSION**

For the foregoing reasons, the Court orders Gregory Village to produce the documents the Court has identified as not privileged to Plaintiffs within ten days of the date of this Order.

With respect to the documents on the privilege log that are not addressed in this Order, the Court's prior order, ECF No. 104, contemplated that the parties would meet and confer immediately upon receipt of this Order to narrow or eliminate their differences over the entries on Gregory Village's privilege log. Given the Court's doubts regarding the integrity of Gregory

/ / /

/ / /

---

[3] See, e.g., Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 142 (3d Cir. 2009) (trial court appropriately found attorneys "acted in bad faith in multiplying the proceedings" based in part on their failure to provide privilege logs); Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp., No. 3:10-CV-1559, 2014 WL 3055358, at *7 (M.D. Pa. July 3, 2014) ("Because the information necessary to support the Defendants' claims of attorney-client privilege and work product protection was not produced until *after* the Pozarliks had filed the instant Rule 37 motion, the Defendants' failure to timely produce an adequate privilege log may support an award of reasonable expenses incurred in making that motion, including attorney fees.").

Village's privilege log, the parties' meet and confer obligation is suspended, although the parties remain free to conduct such discussions if the parties believe they would be helpful.

**IT IS SO ORDERED.**

Dated: January 25, 2015

										_____
										JON S. TIGAR
										United States District Judge