UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SCHAEFFER, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GREGORY VILLAGE PARTNERS, L.P., et al.,<br><br>　　　　　Defendants. | Case No.  13-cv-04358-JST<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 167 |

Before the Court is Plaintiffs Ryan, Anne, and Reese Schaeffer's Motion for Partial Summary Judgment Against Gregory Village Partners, L.P. ("Gregory Village").  ECF No. 167. For the reasons set forth below, the Court will grant the motion in part.

I.    **BACKGROUND**

Plaintiffs are Anne, Ryan, and Reese Schaeffer, the owners and residents of a home located at 95 Cynthia Drive in Pleasanton, California.[1]  R. Schaeffer Decl., ¶¶ 2, 3, 5; ECF No. 169, Decl. of Anne Schaeffer ("A. Schaffer Decl."), ¶¶ 2, 3, 5.  Ryan and Anne Schaeffer are Reese Schaeffer's parents.  R. Schaeffer Decl., ¶ 4; A. Schaeffer Decl., ¶ 4.  Ryan and Anne Schaeffer purchased the home at 95 Cynthia Drive on or about June 1, 2006, and Reese was born in the home on May 31, 2010.  R. Schaeffer Decl., ¶¶ 3, 4; A. Schaeffer Decl., ¶¶ 3, 4.

In June of 2010, at the direction of Gregory Village, soil vapor samples were collected at Plaintiffs' property, one in the front yard and one from beneath Plaintiffs' garage.  R. Schaeffer Decl., Ex. 1 at 1.  In August 2010, Gregory Village sent the results of those samples in a letter to Plaintiffs.  Id.  The samples revealed concentrations of perchloroethylene ("PCE")[2] that exceeded

---

[1] Ryan Schaeffer no longer makes the home his primary residence.  ECF No. 171, Decl. of Ryan Schaeffer ("R. Schaeffer Decl."), ¶¶ 5, 6.

[2] PCE is also known as tetrachloroethene.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Environmental Screening Levels ("ESLs").  Id.  In the letter, Gregory Village explained that,

2   because the measured levels exceeded ESLs for PCE, further sampling of the air within the home

3   was advisable.  Id. at 1-2.  Later in August 2010, more sampling was conducted, this time of the

4   indoor air at Plaintiffs' home.  See Decl. of John R. Till ("Till Decl."), Ex. 8 at 1.  These samples,

5   along with subsequent samples, confirmed that the indoor air and the soil at Plaintiffs' property

6   were contaminated with PCE at levels that exceeded ESLs for residential property.  Id.  In certain

7   areas in and around the home, measured levels of PCE exceeded the ESLs by up to twenty-seven

8   times.  Id., Ex. 3 at 2.

9         PCE is a chemical solvent that is often used in, and is a waste product of, dry cleaning

10  operations.  ECF No. 170, Decl. of Anne M. Farr ("Farr Decl."), ¶¶ 10, 25-28.  It, along with its

11  "daughter" compounds—those substances into which it degrades, including trichloroethylene

12  ("TCE"), dichloroethylene ("DCE"), and vinyl chloride—are "hazardous" substances.  See, e.g.,

13  42 U.S.C. §§ 7412, 9601(14); Cal. Health & Safety Code §§ 25281, 25316.  Consequently,

14  regulatory agencies adopt certain standards regarding permissible levels of these substances in

15  various circumstances, such as the ESLs mentioned above.  See id.

16        The California Regional Water Quality Control Board-San Francisco Bay Region

17  ("Regional Board"), which has jurisdiction over water contamination in the area at issue here, uses

18  ESLs as tools "to evaluate contamination, [in] different media at sites, [including] soil, soil vapor,

19  [and] groundwater."  ECF No. 172-2, Depo. of Kevin Brown ("Brown Depo.") 191:19-22.  The

20  ESLs are "conservative," but if an actor "exceed[s] these screening level numbers . . . [the actor is]

21  going to have to do more work.  [The actor is] going to have to do something."  Id. 191:24-192:2.

22  When ESLs are exceeded, occupants within a building where the exceedances are measured may

23  be exposed to health risks.  Id. 192:3-8.

24        In addition to ESLs, the Regional Board and other agencies have adopted maximum

25  contaminant levels, or "MCLs."  See, e.g., 22 Cal. Code Regs. § 64444; 42 U.S.C. § 300g-2.

26  MCLs are standards used to establish safe levels of various chemicals in drinking water.  Id.

27        After discovering that levels of PCE and other contaminants in, around, and under their

28  home exceeded applicable MCLs and ESLs, Plaintiffs brought this case against a number of

defendants.  ECF No. 1, ¶ 1; see id., Ex. A.  Of particular relevance here, Plaintiffs filed suit against Gregory Village, the Kenlow Corporation, Chevron USA, Inc. ("Chevron"), and the Central Contra Costa Sanitary District.  ECF No. 1, ¶¶ 7, 8, 10, 16.

Gregory Village is the current owner of a commercial strip mall located at 1601 through 1699 Contra Costa Boulevard in Pleasant Hill, California.  See Case No. 3:11-cv-01597-PJH, ECF No. 1 ("Gregory Village Complaint"), ¶¶ 1, 2.  The mall is located one to two blocks south of Plaintiffs' residence.  See, e.g., Till Decl., Ex. RFA 22, Pt. 1, at 38, 39 of 39.  Plaintiffs allege that releases from a former dry cleaning establishment at 1643 Contra Costa Boulevard, P&K Cleaners, which provided on-site dry cleaning services from 1965 to 1992, Till Decl., Ex. 22, Ex. RFA 24 at 4, are one of the primary sources of PCE contamination that has reached their home.  Gregory Village acquired the strip mall, in which P&K Cleaners was located, from Kenlow Corporation through a series of intervening entities.  ECF No. 172-1, Depo. of Robert Isackson ("Isackson Depo.") 65:2-67:18, 133:22-135:9, 135:21-136:21, 140:16-19, 154:23-155:22, 156:11-157:5, 157:9-159:9 & Exs.  The transfer of ownership occurred in February 1998.  Id. 157:11-158:8.  At the time of purchase, Gregory Village and Kenlow Corporation signed an indemnity and release agreement, and a release of claims.  Id. 145:23-146:2; 175:8-11 & Ex. 17.

In 1988 and 1989, hundreds of pounds of waste PCE were removed from P&K Cleaners.  See ECF No. 171-10, Till Decl., Ex. 10, Depo. of Lim Moon Soo ("Soo Depo.") 38:23-40:23 & Ex. 5.  Then, in 1997, before it purchased the Gregory Village mall, Gregory Village received reports disclosing PCE contamination on the property.  Isackson Depo. 68:24-71:22, 90:16-24, 93:23-94:11; see also id., Ex. 17, ¶ 7 (real estate purchase contract provision disclosing the presence of contamination in the soils and groundwater at the Gregory Village property); ECF No. 172-10, Depo. of David R. DeMent ("DeMent Depo.") & Exs.; ECF No. 172-9, Depo. of Warren Chamberlain.  Gregory Village concedes that, at the time of purchase, it was "aware of both the existence of P&K Cleaners and a minor soil and groundwater release of tetracholorethylene [sic], PCE, caused by P&K Cleaners . . . ."  Id. 180:16-182:23.

When Gregory Village took possession of the Gregory Village property, P&K Cleaners' dry cleaning equipment was still on the premises and had not been cleaned or emptied.  See Soo

Depo. 130:5-132:18; 135:16-136:1.  Gregory Village took possession of that equipment pursuant to a settlement agreement it entered into with the former operators of P&K Cleaners.  Id. 126:22-132:18, 135:16-136:1 & Exs. 15, 16.  In 1999, Gregory Village hired a company that, along with subcontractors, cleaned, removed, and disposed of the remaining dry cleaning equipment.  ECF No. 174-5 at 11 of 40; see ECF No. 173-1, Depo. of Bruce Schmitt; ECF No. 214, Decl. of Jeffrey M. Curtiss ("Curtiss Decl."), Ex. C at 5-11 0f 44, 26 of 44.  That equipment contained approximately thirty gallons of PCE and/or PCE and water.  Curtiss Decl., Ex. C at 26, 35 of 44.

Gregory Village has undertaken other steps toward identification, mitigation, and remediation of contamination at and from the former P&K Cleaners site, including:  removing thirty cubic yards of contaminated soil, id. at 35 of 44; ECF No. 212, Decl. of Mary Haber ("Haber Decl."), ¶ 12; ongoing and regular sampling and monitoring at various locations near the P&K Cleaners site, including in the vicinity of Plaintiffs' home, Haber Decl., ¶ 13; e.g., ECF Nos. 173-5, 173-6, 214, Ex. C. at 12-44 of 44; and installing a sub-slab depressurization system (to mitigate PCE concentrations in the indoor air at Plaintiffs' home), Haber Decl., ¶¶ 23-26; Brown Depo. 249:1-21.

Local agencies, including first the Contra Costa County Health Services Department, and then the Regional Board, began identification and remediation efforts at the P&K Cleaners site, and in Plaintiffs' neighborhood, at least as early as 1999.  See, e.g., DeMent Depo., Ex. 10.  These efforts largely included the installation of monitoring wells and sampling and monitoring so that the contamination and its parameters could be defined and tracked.  See, e.g., ECF Nos. 173-5, 173-6, 214, Ex. C. at 12-44 of 44.  Monitoring reports commissioned by Gregory Village consistently state that groundwater flow is in a northerly (sometimes northeasterly) direction, the direction in which Plaintiffs' house is located from the Gregory Village mall.  See, e.g., ECF No. 173-5 at 5 of 7; ECF No. 213, Decl. of Steven G. Miller ("Miller Decl."), Ex. D; Curtiss Decl., Ex. C at 25-26 of 44; Till Decl., Ex. RFA 20 at 4, 9 of 11; id., Ex. RFA 8 at 11 of 20.

A sewer line, maintained by the Central Contra Costa Sanitary District, runs from the Chevron property (which is on the block south of the Gregory Village property), past the rear side of the former P&K Cleaners, and to the intersection where Plaintiffs' home is located.  Miller

Decl., Ex. C.  Gregory Village's expert, Steven Miller, believes that this sewer line is the source of the contamination at Plaintiffs' residence.[3]  Miller Decl., ¶¶ 11-13; see also Curtiss Decl., Ex. C at 25, 39 of 44.  Miller has also provided a map that shows a break in concentrations of sampled PCE between the former P&K Cleaners site and Plaintiffs' property, which could tend to suggest that the contamination did not flow from P&K Cleaners, but instead came from some other source. See id., Ex. D.

Contamination at the Gregory Village site continues to be a concern for the Regional Board.  According to Kevin Brown, "we have really, really high soil vapor concentrations directly beneath the former dry cleaner, so clearly there's still source there that has to be remediated." Brown Depo. 180:16-19; see also, e.g., Till Decl., Ex. RFA 24 at 2 (Work Plan for On-Site Sub-Slab Soil Vapor Testing, February 25, 2010, commissioned by Gregory Village).  The Board "believe[s] there's still a significant source [at the Gregory Village site], and so groundwater moving through contaminated soil most likely is still contributing."  Brown Depo. 186:7-14. According to Brown, the P&K Cleaners "was a source or is a primary source of the PCE at the Gregory Village mall."  Brown Depo. 186:25-187:5.  As of the date of Brown's deposition, he believed that "it is clear that [the P&K Cleaners site] is a primary source area" for the contaminants at Plaintiffs' residence.  Id. 213:2-9.  Accordingly, in November 2014, the Regional Board issued a remediation order in which it declared that both Gregory Village and Chevron are dischargers responsible for contamination in the vicinity of Plaintiffs' residence, and also ordering initial site cleanup to begin.  ECF No. 172-2; ECF No. 215, Exs. A, B; Brown Depo. 160:21-162:7 & Ex. 39.  Gregory Village has not undertaken the remediation the Regional Board ordered on November 19, 2014.  Haber Decl., ¶ 29.

Plaintiffs have alleged that Chevron is another primary source of the contamination at their property.  Dry cleaning operations operated for many years on one portion of the Chevron property.  See Till Decl., Ex. RFA 8 at 15 of 20.  In addition, a service station and auto repair

---

[3] Kevin Brown, the Regional Board employee who currently oversees remediation efforts related to the contamination at issue here, appears to believe that this sewer flows in a southerly direction, that is, away from Plaintiffs' residence.  See Brown Depo. 240:19-241:1.

United States District Court
Northern District of California

facility operated at that location.  Gregory Village Complaint, ¶¶ 8, 10.  In the early 1970s, Chevron installed at least one waste oil tank on the property, and in 1986, when the tank was removed, holes were observed in the tank.  Id., ¶ 9; Till Decl., Ex. 36, ECF No. 173-12 at 69, 79 of 109; Farr Decl., Ex. 3 at FARR0124-0138; Brown Depo., Ex. 22 at 2.  PCE-related chemical compounds were observed and detected in the soil where the tank had been located.  Id. at 79 of 109.

On February 27, 2015, Plaintiffs filed this Motion for Partial Summary Judgment Against Gregory Village, seeking judgment that Gregory Village's liability has been established as to Plaintiff's claims for public nuisance, private nuisance, trespass, negligence, negligence per se, declaratory relief, and cost recovery under the Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300, *et seq.*  Plaintiffs do not seek summary judgment as to damages.

## II.      REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits courts to take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Both parties have asked the Court to take judicial notice of certain documents or facts.

### A.      Plaintiffs

Plaintiffs ask the Court to take judicial notice of a number of documents.  The first category of documents includes toxicological reports for PCE and its daughter compounds, reports regarding state remediation programs for dry cleaning operations, water quality control plans, and other similar reports prepared by local, state, or federal agencies to address environmental PCE contamination and means of mitigating or remediating that contamination.  See ECF No. 181 at 1-4 & Exs. 1-17, 25.  Plaintiffs ask the Court to take notice of these documents pursuant to Rules 201, 901, 902, and 1005 of the Federal Rules of Evidence.  Similarly, Plaintiffs ask the Court to take judicial notice of two reports issued by the U.S. Environmental Protection Agency, and a report by the U.S. Department of Health and Human Services, National Institute for Occupational Safety and Health.  ECF No. 181 at 5-6 & Exs. 22-24.  These reports pertain specifically to the

1   operations and maintenance practices for controlling exposure to PCE at dry cleaning facilities,

2   and estimating the potential for the occurrence of a variant of PCE at Superfund sites.  Id.

3        The Court finds that these documents are properly subject to judicial notice, as they are

4   matters of public record, and the facts asserted therein are not subject to reasonable dispute

5   because they can be readily and accurately determined by resort to sources whose accuracy cannot

6   reasonably be questioned.  See Fed. R. Evid. 201; Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir.

7   2001) ("a court may take judicial notice of 'matters of public record.'") (citation omitted).

8        The second category of information that Plaintiffs request judicial notice of are three

9   filings in the federal case Gregory Village brought against Chevron relating to the contamination

10   at issue here.  See ECF No. 181 at 4-5 & Exs. 18-20; Case No. 3:11-cv-01597-PJH (N.D. Cal.).

11   Plaintiffs ask for notice of the facts commemorated in those filings pursuant to Federal Rules of

12   Evidence 201 and 801.

13        The Court finds that these filings are subject to judicial notice, as they are court documents

14   that are generally subject to notice.  See Lee, 250 F.3d at 689.  The Court does not, however, take

15   notice of allegations asserted in the documents as facts; rather, the Court takes notice that the

16   documents were filed, and of the existence of the allegations in those documents.  Id. at 689-90

17   (explaining that, while a district court may take notice of the existence of public records and

18   certain matters in those records, a court should not take notice of disputed facts contained in public

19   records).

20        Next, Plaintiffs ask the Court to take judicial notice that: (1) "California is in the midst of a

21   serious, multi-year drought, which affects the water resources of the state"; and (2) the State Water

22   Resources Control Board ("State Board") "has a policy of antidegr[ad]ation of high quality waters

23   of the state, including groundwater."  See ECF No. 181 at 5 & Ex. 21.  Plaintiffs seek notice of

24   these facts pursuant to Federal Rule of Evidence 201.

25        The Court will take notice of the fact that California is in the midst of a serious, multi-year

26   drought that affects state water resources.  That fact is not subject to reasonable dispute because it

27   is one generally known within this Court's territorial jurisdiction.  See Fed. R. Evid. 201.  The

28   Court will also take notice that the State Board has a policy of anti-degradation of state waters, as

United States District Court
Northern District of California

7

1    that fact is reflected in the State Board's Resolution No. 68-16, ECF No. 181, Ex. 21, and the

2    existence of that policy is therefore not reasonably subject to dispute.

3           Finally, Plaintiffs ask the Court to take judicial notice of Gregory Village's Answer to

4    Plaintiffs' Fourth Amended Complaint, which was filed on February 22, 2013, while this action

5    was in state court.  ECF No. 219, ¶ 3.  For the same reason that the Court took notice of Gregory

6    Village's filings in Case No. 3:11-cv-01597-PJH, the Court will take notice of the fact that

7    Gregory Village filed an answer, and the fact of Gregory Village's allegations therein.  The Court

8    will not take notice that the allegations in that answer are fact.  Lee, 250 F.3d at 689-90.

9           **B.     Gregory Village**

10          Gregory Village asks the Court to take judicial notice of two documents pursuant to

11   Federal Rules of Evidence 201 and 1005: (1) the Regional Board's Order No. R2-2014-0041,

12   which concerns the former P&K Dry Cleaners site; and (2) the Regional Board's Order No. R2-

13   2014-0042, Adoption of Initial Site Cleanup Requirements for the Chevron property, which is

14   located at 1705 Contra Costa Boulevard in Pleasant Hill.

15          Because these documents are matters of public record, the Court will take notice of them.

16   See Lee, 250 F.3d at 688-89.  The Court also will take notice of certain contents of these

17   documents, such as the Regional Board's specific orders for cleanup and remediation at the sites

18   discussed in those documents.

19   **III.    EVIDENTIARY OBJECTIONS**

20          In their Reply Memorandum in support of their motion, Plaintiffs make several objections

21   to the evidence Gregory Village submitted in support of its Opposition.  See ECF No. 218 at 1-2.

22   The objections are stated to entire paragraphs, or even groups of paragraphs, and so it is not

23   possible for the Court to fairly evaluate the objections.  For example, Plaintiffs object to

24   paragraphs eight through thirty of the Haber Declaration, on grounds that the testimony represents

25   improper lay opinion.  Paragraph nine states: "After closing, GVP performed additional

26   investigation work needed to assess what remediation work was required."  The quoted language

27   is an historical recitation that contains no expression of opinion.  Similarly, Plaintiffs object to

28   paragraphs one through thirty and paragraph thirty-two of the same declaration on the grounds of

1    "No Authentication," i.e., that Haber "relies on documents, but does not support a finding that the

2    matters in question are what the proponent claims."  But some paragraphs, like paragraph nine, do

3    not refer to documents at all.

4          The Court can only consider objections that are properly asserted.  Plaintiffs' objections

5    are overruled in their entirety without prejudice to the assertion of proper objections, made to

6    specific statements, at the time of trial or in connection with a future motion.

7    **IV.    LEGAL STANDARD**

8          Summary judgment is proper when the "pleadings, depositions, answers to interrogatories,

9    and admissions on file, together with the affidavits, show that there is no genuine issue as to any

10   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

11   56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find

12   for the non-moving party, and "material" only if the fact may affect the outcome of the case.

13   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All reasonable inferences must be

14   drawn in the light most favorable to the non-moving party.  Olsen v. Idaho State Bd. of Med., 363

15   F.3d 916, 922 (9th Cir. 2004).  Unsupported conjecture or conclusory statements, however, do not

16   create a genuine dispute of material fact and will not defeat summary judgment.  Surrell v. Cal.

17   Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).  The Court may grant summary judgment

18   as to a "part of each claim or defense" provided no genuine dispute of material fact exists and the

19   movant is entitled to judgment as a matter of law as to that part of the claim or defense.  Fed. R.

20   Civ. P. 56(a).

21   **V.    DISCUSSION**

22         **A.    Negligence**

23         Under California law, "[e]veryone is responsible . . . for an injury occasioned to another by

24   his or her want of ordinary care or skill in the management of his or her property . . . ."  Cal. Civ.

25   Code § 1714(a).  "Negligence is the failure to use reasonable care to prevent harm to oneself or to

26   others.  A person is negligent if he or she does something that a reasonably careful person would

27   not do in the same situation or fails to do something that a reasonably careful person would do in

28   the same situation."  Coppola v. Smith, 935 F. Supp. 2d 993, 1013 (E.D. Cal. 2013).  "Actionable

United States District Court
Northern District of California

negligence is traditionally regarded as involving the following: (1) a *legal duty* to use due care; (b) a *breach* of such legal duty; (3) the breach as the *proximate or legal cause* of the resulting injury."[4]  Jackson v. AEG Live, Inc., 233 Cal. App. 4th 1156, 1173 (2015) (citation and internal quotations omitted).  "While breach of duty and proximate cause normally present factual questions, the existence of a legal duty in a given factual situation is a question of law for the courts to determine."  Id. (citations and internal quotations omitted).

Plaintiffs argue that Gregory Village owed a duty to surrounding landowners to prevent, mitigate, remediate, and/or stem further contamination of those landowners' property by potentially harmful chemicals like PCE.  Id. at 24-25.  Specifically, Gregory Village:

> had and has a duty to properly use and handle hazardous substances, solid wastes, and hazardous wastes with due care and in a manner that does not cause, permit, or contribute to contamination of nearby land, water, and groundwater, including a duty to take reasonable steps to protect against harm to Plaintiffs' Home.

Id. at 25.  Further, Gregory Village "had a duty of ordinary care to its neighbors to investigate and remediate the contamination at and emanating from the [Gregory Village] Property in a timely and complete fashion, and to remediate these hazardous wastes to avoid exposing Plaintiffs to those hazardous wastes."  Id.

Gregory Village responds that Plaintiffs have failed to prove causation as a matter of law, and that there is at least a dispute of material fact about whether Gregory Village has acted reasonably to address contamination at Plaintiffs' property.  ECF No. 211 at 9-20, 23-27. Gregory Village also argues that Plaintiffs' negligence claim is time-barred.  Id. at 22-23.

## 1.    Statute of limitations

Gregory Village argues that Plaintiffs' negligence claim is barred by the three-year statute of limitations.  ECF No. 211 at 22-23; see Cal. Code Civ. Proc. § 338.  Gregory Village bases this argument on a disclosure notice Plaintiffs received in May 2006, shortly after Plaintiffs went into escrow on the property at 95 Cynthia Drive.  The notice informed Plaintiffs that the P&K Cleaners site was "regulated by an agency or [was] listed by a state or federal agency as being contaminated

---

[4] A fourth element of negligence, damages, is not at issue in this motion.  See ECF No. 218 at 4.

United States District Court
Northern District of California

either currently or in the past." Id. at 22. Because Plaintiffs did not file suit until June 1, 2011, Gregory Village argues that their negligence claim for contamination from the P&K Cleaners site is untimely because, with the exercise of reasonable diligence, Plaintiffs could have discovered the contamination at their residence by reading the disclosure report and investigating the contamination at or around their property. Id. at 23.

Plaintiffs respond that Gregory Village waived its statute of limitations defense because it failed to cite the statutory subsection on which it relies for the defense in its answer to the operative complaint. ECF No. 218 at 7. Plaintiffs also assert that their negligence claim is timely because Gregory Village's negligence is ongoing and that pursuant to the discovery rule, Plaintiffs only became aware (or could have become aware, with the exercise of reasonable diligence) of the contamination at their property in 2010. Id. at 7-9.

Plaintiffs' first response is dispositive. Under California law,[5] a defendant pleading a statute of limitations defense may do so in one of two ways: (1) citing the applicable statutory section, and if the statutory section has subdivisions, the subdivision pursuant to which the defense is raised; or (2) pleading all of the facts showing that the action is barred. Mysel v. Gross, 70 Cal. App. 3d Supp. 10, 15 (1977) (citations omitted); see Cal. Code Civ. Proc. § 458 ("In pleading the Statute of Limitations it is not necessary to state the facts showing the defense, but it may be stated generally that the action is barred by the provisions of Section ___ (giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure[.]"). This requirement is strictly construed. Davenport v. Stratton, 24 Cal. 2d 232, 247 (1944).

Here, Gregory Village identified section 338 of the California Code of Civil Procedure as the applicable limitations section in its answer. See ECF No. 219, Ex. A, ¶ 19. Gregory Village cited subsections (a) and (b) of that statute in its opposition to the motion for summary judgment.

---

[5] In most circumstances, a federal court applying substantive state law applies federal procedural rules to the action. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); cf. Crowe v. Wiltel Commc'n Sys., 103 F.3d 897, 899 (9th Cir. 1996) (applying state substantive law with respect to state-law claims over which the federal court exercised supplemental jurisdiction). Statutes of limitations, however, are considered substantive law and therefore are governed by state-law rules. Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 108-10 (1945).

United States District Court
Northern District of California

See ECF No. 211 at 22-23.  Yet Gregory Village did not identify these subsections in its answer to the operative complaint.  See ECF No. 219, Ex. A, ¶ 19.  Accordingly, under section 458 and the cases interpreting that provision, Gregory Village waived its statute of limitations defense when it answered Plaintiffs' complaint.[6]

### 2.   Duty

Gregory Village appears not to contest the existence of a duty to Plaintiffs "to use due care to not contaminate [Plaintiffs' property] and surrounding land and water, and also duties to use due care to properly dispose of and clean up hazardous substances."  Coppola, 935 F. Supp. 2d at 1015 (citing Walnut Creek Manor, LLC v. Mayhew Ctr., No. C 07-5664 CW, 2010 WL 653561, at *1 (N.D. Cal. Feb. 22, 2010)).  The Court finds as a matter of law that Plaintiffs have established the element of duty.[7]

### 3.   Breach

Breach is a factual question.  At bottom, the question is whether a defendant's actions or omissions failed to meet the applicable duty of care—i.e., whether the defendant acted reasonably in the circumstances.  See Coppola, 935 F. Supp. 2d at 1-15-16 (concluding that the plaintiff's complaint failed to adequately allege breach, as no allegations suggested that one of the defendants had acted unreasonably).

Here, Plaintiffs contend that Gregory Village acted unreasonably by failing to investigate and remediate the contamination at their residence in a timely and adequate manner.  See ECF No. 167 at 25; ECF No. 218 at 9-13.  Gregory Village responds that it has acted reasonably because it: (1) has engaged in ongoing monitoring of soil contamination levels; (2) sampled air quality at

---

[6] Gregory Village argues that the same statute of limitations bars Plaintiffs' claims for negligence per se and declaratory relief insofar as that relief is premised on Gregory Village's negligence. ECF No. 211 at 23.  For the same reason Gregory Village's statute-of-limitations defense fails as to Plaintiffs' negligence claim, the defense does not defeat Plaintiffs' negligence per se and declaratory relief claims.

[7] "Upon a showing that there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may grant summary judgment in the party's favor on 'each claim or defense—or the part of each claim or defense—on which summary judgment is sought.'"  Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 14-A (quoting Fed. R. Civ. P. 56(a)).

United States District Court
Northern District of California

Plaintiffs' home; and upon receiving the test results (3) installed a sub-slab depressurization system to mitigate air contamination in the home; (4) removed approximately thirty cubic yards of contaminated soil from the P&K Cleaners site; (5) hired experts to assess the potential harm to neighbors that could flow from the former dry cleaning operations; and (6) followed those experts' direction as to how to address the contamination.  ECF No. 211 at 18-20.  Gregory Village also contends, relying on its toxicologists and other experts, that the contamination at Plaintiffs' residence is not at a level that is harmful to Plaintiffs—or at least not to the extent that Plaintiffs assert—and therefore that the actions Gregory Village has undertaken are more than sufficient to satisfy its duty to act reasonably in the circumstances to prevent and address any potential harm to Plaintiffs.  Id. at 16-17.

The reasonableness of a defendant's actions is a quintessential jury question.  See, e.g., Hatch v. Ford Motor Co., 163 Cal. App. 2d 393, 397 (1958) ("The duty [of care] having been found to exist, whether it has been breached is a question of fact for the triers of the facts"); Trujillo v. G.A. Enters., Inc., 36 Cal. App. 4th 1105, 1109 (1995) (reversing summary judgment on the issue of the reasonableness of defendant's actions, because "whether [defendant] acted reasonably under the circumstances . . . [is a] question[] of fact to be resolved by trial, not summary judgment."); Dailey v. L.A. Unified Sch. Dist., 2 Cal. 3d 741, 749 n.6 (1970) ("It is the uniform rule that the determination of whether [defendant's actions] amount[] to due care, is a question of fact for the jury."); Dan D. Dobbs, et al., The Law of Torts, § 255 (2d ed. 2014) (discussing breach, among other issues, as a "quintessential jury question[]").  Plaintiffs have not satisfied their burden to show the absence of a dispute of material fact as to breach.  Whether Gregory Village's actions to contain the pollution on its property, and/or remediate the pollution at Plaintiffs' property, were reasonable under the circumstances must be decided by a jury.

### 4.    Causation

The Court finds that Plaintiffs have also not met their burden to prove causation as a matter of law.

Plaintiffs have identified ample evidence tending to show that the contamination at their residence could be derived from former dry cleaning operations at P&K Cleaners.  This evidence

includes, among other things: (1) that dry cleaning operations using PCE were undertaken at P&K Cleaners for a number of years; (2) that when Gregory Village purchased the strip mall where P&K Cleaners was located, dry cleaning equipment containing PCE was still present on-site; (3) that samples at the P&K Cleaners site both before and after Gregory Village's acquisition of the property displayed high levels of the types of contaminants that are present in and under Plaintiffs' home; and (4) that the general groundwater flow direction from the P&K Cleaners cite is northward or northeastward—in the direction of Plaintiffs' home.  Plaintiffs' expert, Anne Farr, also has submitted her opinion that contamination from the Gregory Village site is indisputably part of the plume of contamination that has reached Plaintiffs' home.  And the Regional Board has concluded that Gregory Village is a discharger of the contaminants at issue.

But Plaintiffs' evidence is not undisputed.  Gregory Village has raised a genuine dispute of material fact as to whether and/or to what extent PCE and other chemicals from its property are the source of the contamination at Plaintiffs' home.  For example, it points to:  (1) the leaky underground storage tanks at the Chevron service station and the former dry cleaning site at that property as alternative sources of the contamination; (2) the potential for contamination to have flowed to Plaintiffs' residence from some other source by way of the Central Contra Costa Sanitary District sewer; (3) Plaintiffs' failure to indisputably connect the contamination at their residence to PCE coming from the former P&K Cleaners; and (4) the map that appears to show a break in contamination levels between the location of the former P&K Cleaners and Plaintiffs' residence, but that still shows a connection to the sanitary sewer line.  Gregory Village's expert witness Steven G. Miller opines that "The origin of the PCE detected at Plaintiffs' property cannot be determined," ECF No. 213 at 2, but if a particular source must be specified, "the likely source of the detected PCE is the CCCSD sewer located a few feet from the Plaintiffs' Property that transmits wastewater from many businesses located on that sewer line up-stream of the Plaintiffs' Property."  Id. at 5.

Thus, while the evidence suggests a pathway of contamination from the former P&K Cleaners site to Plaintiffs' property, the evidence does not establish that source as a matter of law.  Accordingly, summary judgment must be denied as to the element of causation and any claims

that require proof of causation.

### B.     Negligence Per Se

Under certain circumstances, violation of a statute or regulation gives rise to a presumption of negligence.  That presumption is called negligence per se.  Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc., 190 Cal. App. 4th 1502, 1526 (2010); Cal. Evid. Code § 669.

Under section 669:

> The failure of a person to exercise due care is presumed if:
>
> (1) He violated a statute, ordinance, or regulation of a public entity;
>
> (2) The violation proximately caused death or injury to person or property;
>
> (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
>
> (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669(a).

Plaintiffs argue that Gregory Village violated public and private nuisance statutes, including California Code of Civil Procedure section 731 and California Civil Code sections 3479 and 3480, as well as California Penal Code section 374.8(b) and California Water Code section 13350(b).  ECF No. 167 at 26.  The latter statutes provide, respectively, criminal penalties for the knowing discharge of hazardous substances onto land or into state waters, and strict liability for those who cause or permit hazardous substances to be discharged in or on state waters.  Cal. Penal Code § 374.8(b); Cal. Water Code § 13350(b).

As with Plaintiffs' negligence claim, however, factual issues of breach and causation prevent the Court from entering summary judgment in Plaintiffs' favor as to their negligence per se claim in its totality.  See section V.A.4., supra; Cal. Evid. Code § 669(a)(1), (2); David v. Hernandez, 226 Cal. App. 4th 578, 584 (2014) (in a negligence per se case, "[t]he plaintiff still has the burden of proving causation.").  Thus, the remaining questions under the negligence per se analysis are whether: (1) Plaintiffs' alleged injury resulted from an occurrence of the nature that

the statutes identified above were designed to prevent; and (2) Plaintiffs are members of the class

of persons for whose protection the statutes were adopted.[8]  See Cal. Evid. Code § 669(a)(3), (4).

The Court finds that the injuries Plaintiffs have suffered—damage to their residence as a

result of soil, soil vapor, and groundwater contamination, and the risk of harmful health effects

due to the release of hazardous chemicals in their immediate environment—are the types of

injuries that California nuisance statutes, California Penal Code section 374.8(b), and California

Water Code section 13350(b) were designed to prevent.  The Court also finds that Plaintiffs fall

within the class of persons for whose protection the statutes were enacted – that is, they are

members of the California public who have been exposed to potentially harmful contamination at

their residence.  Plaintiffs are entitled to summary judgment as to these two elements of their

negligence per se cause of action.

### C.      Public Nuisance

Under California law, a nuisance is "anything that is injurious to health or is indecent or

offensive to the senses, or an obstruction to the free use of property, that interferes with the

comfortable enjoyment of life or property . . . ."  In re Firearm Cases, 126 Cal. App. 4th 959, 987

(2005) (internal alterations omitted).  Any person subject to a nuisance may maintain an action for

damages caused by, and abatement of, a nuisance.  Cal. Civ. Code §§ 3484, 3491, 3501.

A public nuisance "affects at the same time an entire community or neighborhood, or any

considerable number of persons, although the extent of the annoyance or damage inflicted upon

individuals is unequal."  Id. § 3480.  Only a person who is specially injured by a nuisance may

bring an action for public (as opposed to private) nuisance.  Id. § 3493 ("A private person may

maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.").

In other words, the plaintiff's harm must be different from the type of harm suffered by the general

public.  Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc., 805 F. Supp. 2d 888, 901 (N.D. Cal.

---

[8] Gregory Village offers no argument on these issues.  See ECF No. 211 at 27-28.  Instead,
Gregory Village argues that Plaintiffs are not entitled to summary judgment as to their negligence
per se claims under California Penal Code section 374.8(b) and California Water Code section
13350(b) because Plaintiffs have failed to prove, respectively, that Gregory Village acted
knowingly, or that Gregory Village caused or permitted the discharge of hazardous substances.

United States District Court
Northern District of California

2011).

A public nuisance claim under California law requires a plaintiff to prove: (1) the existence of a duty; (2) causation; and that the alleged interference with the use or enjoyment of property is both (3) substantial; and (4) unreasonable.  In re Firearm Cases, 126 Cal. App. 4th at 988 (citation omitted); Meton v. Boustred, 183 Cal. App. 4th 521, 542 (2010) (citations omitted).  And "[e]very successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it."  Cal. Civ. Code § 3483.  Yet, "[w]here negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.  The nuisance claim 'stands or falls with the determination of the negligence cause of action' in such cases."  Meton, 183 Cal. App. 4th at 542 (citations omitted).

Under Meton, the analysis of the elements of duty, causation, and the reasonableness of Gregory Village's actions for the purposes of Plaintiffs' public nuisance claim overlap with those of Plaintiffs' negligence claim.[9]  Accordingly, the Court finds that Plaintiffs have established that Gregory Village owed Plaintiffs a duty, but that Plaintiffs have not shown an absence of dispute of material fact as to whether Gregory Village's actions or omissions caused the harm to them or their property, or whether Gregory Village has acted unreasonably in responding to the contamination at their home.  See section V.A., supra.  The remaining questions to be decided at this time and for the purposes of Plaintiffs' public nuisance claim are whether Plaintiffs have shown that the injury they have suffered is (1) of the type that affects at the same time a community or neighborhood; but (2) that it is sufficiently specialized that Plaintiffs can bring a public nuisance claim; and (3) whether the interference with the use and enjoyment of their property that they have suffered is substantial.[10]

The Court finds that Plaintiffs have shown that the contamination at their property is of the

_____

[9] Unlike Plaintiffs' negligence claim, liability for public nuisance automatically runs to successive property owners.  See Cal. Civ. Code § 3483.

[10] Because Plaintiffs have offered no argument as to whether the contamination they complain of is "substantial," the Court will not address that issue.

type that affects an entire community or neighborhood, and that Plaintiffs have suffered a special injury and therefore may bring a public nuisance claim.  The plume of contamination at issue spans several blocks in the Pleasant Hill neighborhood where Plaintiffs live, and it has infiltrated the soil, soil vapor, and groundwater in that community.  The contamination has reached the groundwater underlying Plaintiffs' home, which is considered part of the "waters of the state," and therefore is a matter of public right.  See Cal. Water Code §§ 102, 13050(e).

Furthermore, Plaintiffs have explained how, though the plume of hazardous chemicals has spread and is spreading in the general neighborhood around their house, the contamination at their residence, in particular, has been measured at levels above regulatory levels for hazardous substances.  See Brown Depo., Ex. 33 at 2 (Regional Board Fact Sheet stating that Plaintiffs' home was one of two sampled in the neighborhood that had indoor-air PCE levels above ESLs).  Moreover, because of the particularly high levels of indoor-air and soil contamination at Plaintiffs' home, Gregory Village installed a sub-slab depressurization system specifically at Plaintiffs' home.  And Ryan Schaeffer has explained that he no longer lives at the residence at least in part because of the annoyance and disturbance the system causes, and because it is "a constant reminder of the presence of toxic contaminants at The Home and property."  R. Schaffer Decl., ¶¶ 11, 13.

Gregory Village does not dispute that Plaintiffs have suffered a "specialized injury," or that the alleged public nuisance affects at the same time the entire neighborhood and/or community.  Gregory Village argues, however, that Plaintiffs consented to the alleged nuisance because at the time they purchased their residence, they were given a disclosure document that informed them of a known release at P&K Cleaners, within a half mile of their home.  ECF No. 211 at 20.  This evidence is inadequate to demonstrate that Plaintiffs were aware that contamination had reached their property at the time they purchased it, and therefore that Plaintiffs consented to purchase an openly contaminated residence.  Rather, the evidence Gregory Village points to only shows that Plaintiffs were aware that some off-site discharges of hazardous wastes had occurred at some point within a half mile of their home.  Gregory Village has failed to show, as a matter of law, that Plaintiffs consented to the contamination at their home.  Moreover, the authorities Gregory Village

cites are inapposite; they deal with whether a lessor of a property consents to a nuisance by knowingly allowing a lessee to cause the nuisance, or whether a purchaser of a property has consented to a nuisance on the property when they purchase the property with knowledge that the prior owner caused an open and notorious nuisance on the property.

Accordingly, the Court finds that Plaintiffs have carried their burden to show that they have suffered a special injury and that they are entitled to bring a claim for public nuisance. The remaining elements of this claim must be decided at trial.

### D.    Private Nuisance

Pursuant to California Civil Code section 3481, every nuisance that is not a public nuisance is a private nuisance. For that reason, the elements of a private nuisance claim are the same as those for a public nuisance claim, except that a plaintiff asserting a private nuisance does not have to prove that the nuisance is one that affects a community or neighborhood and that they suffered a special injury. See Reinhard v. Lawrence Warehouse Co., 41 Cal. App. 2d 741, 745 (1940) ("A nuisance is common or public where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled. A private nuisance is one that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public.") (quotations omitted); e.g., Adams v. MHC ColonyPark Ltd. P'ship, 224 Cal. App. 4th 601 (2014). For that reason, Plaintiffs' and Gregory Village's arguments regarding private nuisance are identical, where they overlap, to those regarding public nuisance.

Accordingly, for the reasons discussed in section V.C., supra, the Court finds that Plaintiffs are entitled to summary judgment of their private nuisance claim as to Gregory Village's duty to Plaintiffs. Plaintiffs have not carried their burden to show causation; that Gregory Village has acted unreasonably; or that the injury they suffered was substantial.

### E.    Trespass

Under California law, a plaintiff asserting a trespass claim must prove: (1) she owns, leases, occupies, or controls the property; (2) the defendant negligently, recklessly, or intentionally caused something tangible to enter the plaintiff's property; (3) the plaintiff did not permit the entry

1    or defendant exceeded the plaintiff's permission; and (4) the defendant's actions were a substantial

2    factor in causing; (5) harm to the plaintiff.  See Judicial Council of Cal. Civil Jury Instruction

3    2000 (2014); e.g., Cassinos v. Union Oil Co., 14 Cal. App. 4th 1700, 1778-79 (1993).

4          Here, as discussed with respect to Plaintiffs' negligence, negligence per se, and nuisance

5    claims, the Court finds that Plaintiffs have failed to show that they are entitled to summary

6    judgment as to the elements of causation and whether Gregory Village acted negligently (and

7    therefore to establish any more culpable mental state that requires more demanding proof, such as

8    recklessness or intentionality).

9          The remaining questions, then, are whether Plaintiffs: own, lease, occupy, or otherwise

10   control the land at issue; did not permit the entry of contaminants onto their land; and suffered

11   harm.  The Court finds that Plaintiffs have established these elements as a matter of law.

12         **F.        Cost Recovery Under the HSAA**

13         The HSAA permits cost recovery for cleanup of hazardous substances from the current

14   owner and operator of a property from which hazardous substances have been released or

15   discharged.  See Cal. Health & Safety Code § 25363(e).  Plaintiffs ask Gregory Village for costs

16   related to removal and remediation of the contamination at their property, including sampling and

17   environmental consultant fees.  ECF No. 167 at 29.

18         To be entitled to costs under the HSAA, Plaintiffs must show that: (1) they incurred

19   necessary costs of remediation and/or removal; (2) those costs were caused by a discharge or

20   release; (3) of a hazardous substance; and (4) Gregory Village is within a class of persons subject

21   to liability.  Cal. Health & Safety Code §§ 25322(a), (b), 25323, 25363(e); Castaic Lake Water

22   Agency v. Whittaker Corp., 272 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003) (discussing elements of

23   federal CERCLA response-cost claims); see United Alloys v. Baker, 797 F. Supp. 2d 974, 1004-

24   05 (C.D. Cal. 2011) (explaining that the HSAA is interpreted consistently with CERCLA, which is

25   the federal counterpart to, and model for, the HSAA); Cal. Health & Safety Code § 25310

26   (providing that definitions provided by CERCLA apply to the HSAA).  Plaintiffs must also show

27   that the director of the California Department of Toxics Substances Control was notified of the

28   lawsuit.  Cal. Health & Safety Code § 25363(e).

United States District Court
Northern District of California

Here, the parties do not dispute that PCE is a hazardous substance, that PCE was released or discharged at the Gregory Village property, that Gregory Village is within the class of persons subject to HSAA liability, or that the director of the California Department of Toxic Substances Control was notified of this lawsuit. Gregory Village instead argues that fact issues prevent the Court from determining the element of causation and that the costs Plaintiffs seek reimbursement for are "necessary."

To prove causation under the HSAA, Plaintiffs must: (1) identify the contaminant at their property; (2) identify the same (or a chemically similar contaminant) at Gregory Village's property; and (3) provide evidence of a "plausible migration pathway by which the contaminant could have traveled from the defendant's facility to" Plaintiffs' residence. See Castaic Lake, 272 F. Supp. 2d at 1066. Plaintiffs have satisfied this burden, but Defendants have pointed to evidence that raises a genuine dispute of material fact as to causation. Thus, for the reasons set forth above, Plaintiffs are not entitled to summary judgment on the element of causation.

Gregory Village also argues that Plaintiffs have not proven, as a matter of law, that the costs they have incurred or may incur as a result of removal and remedial actions are "necessary" for the purposes of the HSAA. See ECF No. 211 at 28-29. The definitions of "remove" and "removal" under the HSAA state that the cleanup or removal activities must be "*necessary* to prevent, minimize, or mitigate damage" that would otherwise result from a release. Cal. Health & Safety Code § 25323 (emphasis added). And part of the definition of "remedy" or "remedial action"—the part pursuant to which Plaintiffs seek reimbursement here, i.e., for monitoring, assessment, and evaluation of a release—requires that the actions be "necessary" for those purposes. See id. § 25322(b). Plaintiffs have not provided evidence that shows, as a matter of law, that the costs they seek were "necessary" to remediate or remove the contamination at their property. Accordingly, the Court finds that Plaintiffs are not entitled to summary judgment as to this element of their HSAA claim.

### G.     Declaratory Relief

Plaintiffs' cause of action for declaratory relief is derivative of their other claims. Because the Court has not granted summary judgment in full as to any of Plaintiffs' other claims, Plaintiffs

are also not entitled to summary judgment of their declaratory relief claim.[11]

## CONCLUSION

For the foregoing reasons, the Court hereby grants the motion for partial summary judgment in part, as explained more fully above.[12]

IT IS SO ORDERED.

Dated:  May 14, 2015

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

---

[11] In its opposition to Plaintiffs' motion, Gregory Village argues that the Regional Board has primary jurisdiction over any injunctive relief that Plaintiffs seek, and that Plaintiffs lack standing to seek injunctive relief.  See ECF No. 211 at 6-9.  These arguments are not relevant to resolution of Plaintiffs' motion.  The Court is not resolving a motion to dismiss, a motion to strike, or even a cross-motion for summary judgment filed by Gregory Village.  Rather, only Plaintiffs seek affirmative relief from the Court (in the form of their motion for summary judgment), and Plaintiffs have not sought summary judgment regarding their entitlement to injunctive relief.  Had Gregory Village wanted the Court to determine whether Plaintiffs are entitled to injunctive relief and/or to dismiss this action pursuant to the primary jurisdiction doctrine, it had the ability to bring its own affirmative motion asking the Court for this relief.  Because Gregory Village did not do so, the Court will not address these issues in this order.

[12] In their motion, Plaintiffs devote considerable space to Kenlow Corporation's prior ownership of the Gregory Village property, Gregory Village's alleged status as a successor in interest to Kenlow, and an alleged agreement by Gregory Village to hold Kenlow harmless and indemnify it. In their reply brief, however, Plaintiffs concede that none of these issues are "material" to the present motion.  ECF No. 218 at 13, 14.  The Court does not address them further.

22